# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADVERTIR INC., **Plaintiff,** v. PEERLESS INDEMNITY INSURANCE COMPANY, **Defendant.** | CIVIL ACTION No. 12-1352 |

**Goldberg, J.**                                                     August 29, 2013

## Memorandum Opinion

In September 2011, following heavy rainfall from tropical storms Lee and Irene, Plaintiff's warehouse in Bensalem, Pennsylvania, suffered water damage when water entered the warehouse through its loading dock doors. Defendant, Peerless Indemnity Insurance Company ("Peerless"), provided property insurance for the property but denied coverage under the policy's exclusion for damage caused by flood and surface water. Plaintiff claims that Peerless' denial of coverage was improper, and that the damage is covered by the policy's endorsement for damage caused by water that "enters into and overflows from within a sump pump, sump pump well or other type of system designed to remove subsurface water which is drained from the foundation area." (Customer Protection Endorsement, Def. Mot. Ex. B, pp. ADVE000100-ADVE000108, ¶ 15(i).)

Presently before the court are the parties' cross-motions for summary judgment. For the reasons that follow, we conclude that the evidence unequivocally shows that the damage was caused by surface water that does not fall within the coverage endorsement relied upon by Plaintiff. Accordingly, Defendant's motion will be granted and Plaintiff's motion denied.

## I. Factual and Procedural History

Plaintiff, Advertir, Inc. ("Advertir"), owns a warehouse in Bensalem, Pennsylvania. The property has three loading bays: Two are located at the front of the building, and a third is located on the side. In front of each loading bay, a concrete slab slopes downward toward the base of the building, where a small concrete wall separates the bottom of the loading dock and the bay door. The loading bay doors are even with the floor of the warehouse, so that a truck can pull into the bay with the bed of the truck even with the warehouse floor to make it easier to load and unload the trucks. A photograph of the loading docks is attached to this Opinion as Exhibit 1. (Pl.'s Resp., Doc. No. 16, Ex. C.)

Each loading bay has a sump pump close to where the declined concrete slab meets the concrete wall of the warehouse. These industrial sump pumps remove water from the loading bays and discharge it away from the building. According to Plaintiff, the discharge pipes attached to the sump pumps are equipped with "check valves" that prevent water from flowing back through the pump and returning to the loading bay. (Greer Aff., Pl.'s Resp. Ex. C, ¶ 11(e).)

On September 7, 2011, heavy rain fell on Bensalem. Despite the presence of the sump pumps, at least one of the loading bays outside of the warehouse filled with water, which then entered the warehouse through the bay doors. Neither party pointed to any evidence reflecting that the sump pumps malfunctioned. Rather, as described by defense expert and structural engineer, David R. Daniels, P.E., rain and local flooding "caused surface water to enter and fill the sump pits faster than the sump pumps" could discharge the water, "resulting in additional surface water filling the loading dock ramps to a level which would have then entered the building." (Daniels Rpt., Def. Mot. Ex. F, p. 12.) According to Daniels, "[t]his additional

2

surface water would not have traveled through the sump pit or sump pump before entering the building." (Id.)

Plaintiff disagrees with certain aspects of Daniels' Report, including how many loading bays flooded, the capacity of the sump pumps and whether they were equipped with check valves. (Greer Aff., ¶ 11.) Importantly, Plaintiff does not contest Daniels' principal conclusion, which is that the capacity of the pumps was simply insufficient to handle the heavy rainfall, resulting in the loading bays gradually filling with surface water until such water entered the warehouse through the bay doors. (Id., ¶¶ 10-11.)

The policy at issue contains a general exclusion from coverage for damage caused by surface water:

> **B. Exclusions**
> **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> *****
>
> **g. Water**
> **(1)** Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> **(2)** Mudslide or mudflow;
> **(3)** Water that backs up or overflows from a sewer, drain or sump; or
> **(4)** Water under the ground surface pressing on, or flowing or seeping through:
>   **(a)** Foundations, walls, floors or paved surfaces;
>   **(b)** Basements, whether paved or not; or
>   **(c)** Doors, windows or other openings.
>
> (Peerless Policy, Def. Mot. Ex. B, BATES pp. ADVE00164-ADVE00165.)

Despite the expansive language in this exclusion, not all water damage was excluded from coverage under the policy. Also included in the policy was a "Customer Protection Endorsement" that specifically provided coverage for damage caused by water "which enters into and overflows from within a sump pump, sump pump well or other type of system designed to remove subsurface water which is drained from the foundation area." (Customer Protection Endorsement, ¶ 15(i).) Plaintiff relies upon this endorsement to support its coverage position.

Peerless denied coverage for Plaintiff's claim, stating that the water damage fell outside of the Customer Protection Endorsement because the water that entered the warehouse had never entered into and overflowed from within a sump pump, sump pump well or other similar system. Peerless emphasized that it is undisputed that the water causing the damage had overflowed from the loading bay and had never entered into the sump pump at all.

Plaintiff disagreed, and filed an action against Peerless in the Philadelphia Court of Common Pleas on February 24, 2012, asserting claims for breach of contract and bad faith. Peerless removed the matter to this Court on March 15, 2012, and the parties have since filed cross-motions for summary judgment. The crux of Plaintiff's argument is that the water damage to the warehouse falls within the Customer Protection Endorsement in that the entire loading bay, including the sloped concrete driveway that directs water into the sump pump, is a "system designed to remove subsurface water." Because we reject this interpretation and find as a matter of law that the exclusions for water damage apply, we will grant Peerless' motion.

## II. Legal Standard

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that judgment is appropriate as a matter of law.

FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). On a motion for summary judgment, the court considers the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256.

## III. Discussion

While the parties dispute some surrounding circumstances, they agree that the damage at issue occurred because water entered the loading bay faster than the sump pumps could remove it, eventually filling the bay and spilling into the warehouse through the loading bay doors. (Greer Aff., ¶ 10 (water entered the warehouse "from an overflow of water from [the] loading bay").) The case hinges upon whether that incident falls within the Customer Protection Endorsement in the policy.

Under Pennsylvania law, "the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)). The court should begin its interpretation of the contract by looking to the language of the policy to determine the intent of the parties. Id. (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)). "[W]hen construing a policy, '[w]ords of common usage . . . are to be construed in their natural, plain and

5

ordinary sense.'" Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038, 1042 (Pa. Super. Ct. 2003) (quoting Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)).

When the language of a policy is clear and unambiguous, the court must give effect to that language. CPB Intern., Inc., 562 F.3d at 595 (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)). When a provision is ambiguous, however, the Court is to construe that language in favor of the insured. Id. "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1185 (Pa. Super. Ct. 2007) (quoting 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005)).

Applying this precedent to the provision at issue, we find that its language is clear and unambiguous, and it does not provide coverage for the damage to Plaintiff's warehouse. The evidence is unequivocal that the water which entered the warehouse never entered into the sump pump at the bottom of the loading bay, and therefore plainly does not fall within the provision covering damage from water that "enters into and overflows from within a sump pump or sump pump well." Plaintiff does not argue otherwise, but instead posits that the entire loading bay, including the sloped concrete ramp, is an "other system designed to remove subsurface water which is drained from the foundation area." (Greer Aff., ¶ 11(a).) This argument is deficient for several reasons.

First, Plaintiff's reading of the endorsement is too expansive, and contrary to its plain language. As Plaintiff recognizes, the loading bay was not "designed to remove" water, but instead was designed to allow for convenient loading and unloading between trucks and the

6

warehouse. (See Pl.'s Resp., PDF p. 19 (loading bays slope downward "so that trucks can load and unload with the bed of the truck even with the floor of the warehouse.").) While the downward slope of the loading bay ramps may have funneled water toward the base of the warehouse, making it prudent to install sump pumps near the foundation area, the purpose of bay is loading and unloading trucks.

Additionally, water entering the loading bay as a result of rainfall or runoff from the surrounding surfaces would not have "drained from the foundation area." (Customer Protection Endorsement, ¶ 15(i)(2).) The foundation is the "solid ground or base" on which a building is erected, or, in other words, "the lowest part of a building, usually constructed below the ground level." OXFORD ENGLISH DICTIONARY ONLINE, June 2013 (Oxford University Press). Here, however, it is undisputed that any water entering the loading bay and removed by the sump pump was runoff from the surrounding grounds and never reached the foundation of the warehouse.

Finally, our interpretation of what is meant by a "system designed to remove subsurface water" is guided by the specific items immediately preceding this more general description. This maxim of contract interpretation, known as ejusdem generis, is "applicable where specific enumeration precedes the word 'other' followed by general words." New Castle Cty., DE v. Nat. Union Fire Ins. Co. of Pitt., PA, 243 F.3d 744, 752 (3d Cir. 2001) (quoting Groshong v. Mt. of Enumclaw Ins. Co., 985 P.2d 1284, 1290 (Or. 1999)). Under the rule, "general words near a specific list are 'not to be construed to their widest extent, but are to be held as applying only to things of the same general kind as those specifically listed.'" Cooper Dist. Co., Inc. v. Amana

Refrigeration, Inc., 63 F.3d 262, 280 (3d Cir. 1995) (quoting BLACK'S LAW DICTIONARY, 464 (5th ed. 1979)).

Here, this maxim applies to limit the language "other type of system designed to remove subsurface water" to things of the same general kind as the specific examples preceding it—a "sump pump" or "sump pump well." Viewed in this context, it is clear that the entire loading bay is not within the scope of the provision. The sloped ramp, like a graded floor in a basement, may serve to divert water toward the sump pump or water removal system, but this does not establish that it is part of the "system" itself, at least as described by the language of the contract. Rather, a natural reading of the provision in context reflects that the provision refers to the actual sump pump and the attached discharge pipes, located near the foundation of Plaintiff's loading bays. Indeed, other courts have applied a similar interpretation to identical provisions in other insurance contracts. For example, just last year Magistrate Judge Lynne A. Sitarski of this district found that this language encompassed the sump pump, "the check valve, and discharge pipe," noting that "the check valve was connected to a pipe that exclusively served the sump pump." Viscounte v. Liberty Mut. Group, 2012 WL 654980, at *5 (E.D. Pa. Dec. 14, 2012); see also Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co., 1996 WL 34393843, at *4-5 (E.D. Pa. Dec. 31, 1996) (water which did not enter into drainage system was surface water not covered by the provision); Front Row Theater, Inc. v. American Mfr.'s Mut. Ins. Cos., 18 F.3d 1343 (6th Cir. 1994) (same).

Even if we were to agree with Plaintiff that the entire loading bay, by virtue of its sloped ramp, is a "system designed to remove subsurface water," Plaintiff has not identified any evidence that the water which flowed into Plaintiff's warehouse "enter[ed] into and overflow[ed]

from within" the loading bay. Indeed, Plaintiff has not offered any admissible evidence at all that indicates the source of the water damage. Instead, Plaintiff relies upon affidavits by three individuals: David Greer, Advertir's President and sole stockholder; Walter Clark, a licensed public adjuster who assisted Plaintiff in presenting its claim to Peerless; and Chuck Doyle, the owner of a water removal company that performed work at the warehouse. (See Pl.'s Resp., Exs. C, D and E.) None of these individuals were present when the water entered Plaintiff's warehouse, and they have no personal knowledge of what occurred on the night of September 7, 2011. See FED. R. EVID. 602. Additionally, these persons have not been offered as experts under Federal Rule of Evidence 702, and were not disclosed to the defense during discovery pursuant to Federal Rule of Civil Procedure 26. Accordingly, their affidavits, which describe what they believe to have occurred in general terms, are of little, if any, assistance to Plaintiff in defeating summary judgment. Plaintiff's evidence would not permit a fact finder to conclude that the water which entered the warehouse actually entered into the loading bay prior to entering the warehouse, rather than, as Defendant's expert opines, entering the warehouse from the surface after the loading bay had already been entirely filled with water.[1]

Accordingly, we agree with Peerless that the water damage to Plaintiff's warehouse falls outside the coverage provided by the Customer Protection Endorsement, and that Plaintiff's

---

[1] Plaintiff also argues that the purpose of the Customer Protection Endorsement was specifically to cover damage from an occurrence like this, relying upon an affidavit from President, David Greer, stating that he said as much to Defendant's agent when he purchased the policy. (Greer Aff., ¶ 12.) In that we find the language of the provision to be unambiguous, this evidence is barred by the parol evidence rule. Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924) ("Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement."). However, it is also worth noting that Greer's affidavit contradicts his previous deposition testimony stating that he was unfamiliar with the specific terms of the policy and did not know what types of losses were covered. (Greer Dep., Reply Ex. F, pp. 60, 86-90.)

9

claim for breach of contract fails as a matter of law. Plaintiff's bad faith claim, which is based upon its allegation that Peerless lacked a reasonable basis for denying coverage, is contingent upon its breach of contract claim and therefore also fails as a matter of law. See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (where the court has determined that the insurer did not breach a contractual duty, there is good cause for the insurer to deny coverage).

**IV.     Conclusion**

For the foregoing reasons, we find that the plain language of the insurance policy purchased by Plaintiff from Peerless does not cover the loss that occurred at Plaintiff's warehouse in September 2011, and that Plaintiff's breach of contract and bad faith claims fail as a matter of law.

An appropriate Order follows.



EXHIBIT 1